# LEE LITIGATION GROUP, PLLC
148 WEST 24TH STREET, EIGHTH FLOOR
NEW YORK, NY 10011
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

WRITER'S DIRECT:   212-465-1188
cklee@leelitigation.com

May 14, 2024

VIA ECF
The Honorable Robert W. Lehrburger, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

         Re: *Rhea v. Clipper Realty, Inc. et al*
            Case No. 1:24-cv-01040

Dear Judge Lehrburger:

  We are counsel to Plaintiff and write, jointly with counsel to Defendants, to respectfully request that the Court approve the parties' settlement agreement as fair and reasonable. Attached hereto as **Exhibit A** please find the parties' Settlement and Release Agreement (the "Settlement Agreement").

  The court in *Wolinsky* sets forth the following criteria for determining whether a proposed settlement is fair and reasonable:

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted).

  The parties participated in a Settlement Conference with Magistrate Judge Robert W. Lehrburger on April 18, 2024 at which they reached a settlement in principle for $71,250. Following the Settlement Conference, the parties continued to negotiate the terms of the settlement, which were memorialized in the executed Settlement Agreement. Based on the above criteria, the Settlement Agreement is fair and reasonable and should be approved by the Court.

**Plaintiff's Range of Possible Recovery**

Pursuant to the Settlement Agreement, Defendants have agreed to pay the total of $71,250 to Plaintiff Marcus Anthony Rhea, $47,214 of which represents the portion of the settlement amount to be allocated to Plaintiff and $24,036 of which is allocated to Plaintiff's counsel's costs, which includes both expenses ($429) and legal fees ($23,607).

Plaintiff originally calculated liability of approximately $335,523.70 in alleged wages, liquidated damages, and penalties if he were to prevail on all of his claims, which included FLSA, New York Labor Law ("NYLL"), and breach of contract claims. (See **Exhibit B**). Plaintiff's calculation is broken down as $162,761.85 in alleged unpaid overtime, $162,761.85 in alleged liquidated damages, and $10,000 in alleged penalties. Defendants deny these claims from the outset of the case, maintaining all along (and still today) that they properly classified Plaintiff as exempt from the FLSA's and NYLL's overtime requirements and that Plaintiff is not entitled to any recovery whatsoever. Defendants also asserted that Plaintiff lacked Article III Standing to assert his NYLL wage notice and wage statement claims and argued that such claims would also be dismissed if this claim continued. Defendants also denied Plaintiff's breach of contract claim.

Ultimately, due to the risks associated with continuing to litigate this "all or nothing" exemption case—and, for Defendants, due to the cost, time, and business distraction associated with continued litigation through its anticipated summary judgment motion—the parties each believe the settlement reached is fair and reasonable. Based on information that they have learned throughout the litigation, including at Settlement Conference, Plaintiff and his counsel believe that the settlement amount represents over 100% of what Plaintiff may be owed on his FLSA claims.

That this is an "all or nothing" case for Plaintiff—meaning a case where an unfavorable outcome on a single legal question (i.e., exemption) would destroy Plaintiff's entire case. Plaintiff's allegations in this action center on a claim that Defendants made unlawful deductions from his salary. More than seeking the recovery of the amount improperly deducted (and potentially liquidated damages), Plaintiff argues that the improper deductions invalidate his salary basis of pay and exempt status. Thus, Plaintiff argues that he is entitled to remuneration for every hour of overtime he worked (plus an equal amount in liquidated damages) since the improper deductions began. Defendants maintain that it never made an unlawful deduction to Plaintiff's salary, but instead, Plaintiff's salary was properly reduced for taking unpaid leave after exhausting all paid leave that was offered under Defendants' bona fide paid leave policies. Should a Court not rule in line with Plaintiff's argument and determine the Defendants did not unlawfully reduce his salary, Plaintiff's recovery could be reduced to, or near to, $0.

In such cases, courts should, due to the heightened litigation risks, accept a substantial "discount" on a plaintiffs' maximum potential recovery, which in the present matter Plaintiff calculated to be $335,523.70. *In re Gen. Motors Corp.*, 55 F.3d 768 at 806.

Underscoring the greater-than-usual litigation risks associated with "all or nothing" exemption cases is the settlement involving global healthcare company Novartis, which was impacted by a subsequent U.S. Supreme Court decision. In early 2012, Novartis reached a multi-million-dollar settlement of claims brought by its current and former pharmaceutical sales representatives who claimed they were misclassified as exempt from federal and state overtime pay requirements. Novartis maintained that the plaintiffs were properly classified under one or more overtime exemptions, including the outside sales exemption. Like this case, if Novartis'

sales representatives were properly classified, then the plaintiffs could not recover any damages. Ultimately the parties settled after the U.S. Supreme Court had agreed to consider—but before it decided—a separate case involving the same issue, i.e., whether the outside sales exemption exempts pharmaceutical sales representatives from overtime pay requirements. *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156 (2012).

Several months after the Novartis settlement was announced, the Supreme Court concluded in *Christopher* that pharmaceutical sales representatives are indeed exempt from the FLSA's overtime requirements pursuant to the outside sales exemption and thus are not entitled to overtime pay. The plaintiffs in *Christopher* were therefore left with no recovery.

For Plaintiff, *Christopher* serves as an important reminder of the heightened risk associated with "all or nothing" litigations. Had the decision been issued several months earlier, the Novartis plaintiffs and their counsel would likely have been left with no recovery instead of a settlement. Notwithstanding Plaintiff's "best case" scenario estimates, Defendants have fiercely maintained that he was properly classified as exempt and, thus, not entitled to <u>any</u> recovery whatsoever. And if this Court (or, if necessary, an appellate court) ruled in Defendants' favor, Plaintiff would be left with nothing. For this reason alone, the parties' negotiated settlement is fair and reasonable.

Based on the documents produced and the discussions at mediation, Plaintiff believes that should this case proceed, proving his claims would be extremely risky and he may end up empty handed.

**The Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses and The Parties Face Serious Litigation Risks**

There is no logical reason for Plaintiff to continue with this litigation, as it is very unlikely that Plaintiff could possibly recover a greater amount than he is receiving through the settlement. As described above, this is an "all or nothing" case that turns on an exemption. Without disclosing anything discussed during the Settlement Conference, following the parties' document exchange and Settlement Conference, the parties believe it would be extremely difficult for Plaintiff to prove his claims at trial. The burdens and expenses of trial are unnecessary and would only increase the Plaintiff's legal fees, without increasing the amount due to Plaintiff. In fact, continuing the litigation and proceeding to trial would be highly risky to Plaintiff. Plaintiff believes the amount he is receiving from the settlement is a fair result.

**The Settlement is a Result of Arm's-Length Negotiation and There is No Possibility of Fraud or Collusion**

The proposed settlement is fair and reasonable because Plaintiff and Defendants were represented by competent and experienced counsel during the litigation and settlement process. There was an exchange of relevant documents and an open sharing of facts and information. The parties negotiated vigorously and were able to reach an agreement during a Settlement Conference with the assistance of Magistrate Judge Robert W. Lehrburger.

**The Attorneys' Fees are Fair and Reasonable**

Pursuant to the settlement, Plaintiff's counsel is to receive $24,036. Plaintiff's counsel represents that it has incurred a lodestar of over $41,606.50 litigating this case, the total of which is much greater than the amount being paid to Plaintiff's counsel under the Settlement Agreement. *See* **Exhibit C**, Fees and Costs Breakdown. Plaintiff further represents that costs alone total $429 (*See* id.), making the attorneys' fees portion only $23,607, or 1/3 of the total settlement after expenses.

Plaintiff's counsel represents that it has invested significant time and resources into litigating this matter vigorously. Plaintiff agreed, upon retaining Plaintiff's counsel, that his counsel may receive a percentage of the full settlement amount negotiated or their lodestar. In settling this matter for $71,250, Plaintiff's counsel agreed to receive a reduced amount, amounting to only half of their lodestar, in order to resolve the matter.

Plaintiff represents and maintains that his counsel's fees and costs of $24,036 are fair and reasonable given that their lodestar exceeds such amount. Such work done by Plaintiff's counsel includes interviewing the Plaintiff, investigating the identity of Defendants, preparing a Complaint, preparing damages calculations, preparing for and attending the Pre-Settlement Telephone Conference, correspondence, negotiating with Defendants' counsel, preparing damage calculations, preparing for and attending the Settlement Conference, preparing and revising the settlement agreement, and preparing and revising this submission.

In view of the foregoing, and as agreed to by Plaintiff, Plaintiff's counsel maintains that their request of $24,036, which provides a <u>negative</u> <u>multiplier</u> on their represented lodestar of more than $41,606.50 should be approved.

*                    *                    *

As such, the parties respectfully request that the Court approve the settlement. We thank Your Honor for considering this matter.


Respectfully submitted,

  */s/ C.K. Lee*
C.K. Lee, Esq.

Encl.
cc: all parties via ECF